COURT OF APPEALS OF VIRGINIA


Present:   Judges Benton, Clements and Beales
Argued at Richmond, Virginia


LARRY AYLETTE AYLOR, SR. AND
 DONNA BROYLES AYLOR
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 3110-05-2                      JUDGE JAMES W. BENTON, JR.
                                                        OCTOBER 31, 2006
MADISON COUNTY DEPARTMENT OF
 SOCIAL SERVICES; MADISON COUNTY
 SCHOOL BOARD


                FROM THE CIRCUIT COURT OF MADISON COUNTY
                        Paul M. Peatross, Jr., Judge

        John G. Berry (Berry & Early, on brief), for appellant.

        George S. Webb, III, Commonwealth's Attorney, for appellee
        Madison County School Board.

        No brief or argument for appellee Madison County Department of
        Social Services.


        In the proceedings from which this appeal arises, the circuit court judge ruled that a teenager

had willfully and materially violated an order adjudicating him to be a child in need of supervision.

The sole question presented by Larry Aylette Aylor, Sr. and Donna Broyles Aylor, the parents of

the juvenile, is whether "the trial court's order placing [the juvenile] in a non-secure residential

facility and requiring the parents to pay for the placement violate[d] . . . Code § 16.1-292(E)." For

the reasons that follow, we affirm the order.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

The record from the circuit court indicates that a judge of the juvenile and domestic relations district court entered an order on September 13, 2004, finding that the teenage son of Larry Aylette Aylor, Sr. and Donna B. Aylor "is a child in need of supervision." See Code § 16.1-278.5.[1] The order recites that, before entry of the order, the judge had considered an evaluation prepared by a family assessment and planning team (also known as an interdisciplinary team, or FAPT). To provide for the "supervision, care, and rehabilitation of the child," see Code § 16.1-278.5(B), the order required the juvenile to "attend school all day, everyday, and complete all assignments," and it contained six other requirements to be fulfilled by the juvenile and his parents. In addition, the order provided as follows:

> In the event that the child is found to have violated this order, the Court may:
>
>     *      *      *      *      *      *      *
>
> 8. If the child is fourteen (14) years of age or older, (i) order the child to be placed in a residential facility, or (ii) if the Court finds that such placement is not likely to meet the child's service needs, order the child detained in a secure facility for a period not to exceed ten (10) consecutive days.

See Code §§ 16.1-291(C) and 16.1-292(E). The order recited that the mother, father, the juvenile, and their attorney were present in the juvenile court and were served with the order. See Code § 16.1-278.5(C). None of the parties appealed from this order.

In November 2004 and February 2005, a representative of the Madison County School Board filed petitions in the juvenile court pursuant to Code § 16.1-292, alleging that the juvenile failed to attend school in violation of the September 13, 2004 order. After these petitions were

---

[1] The record contains only copies of some documents from the juvenile and domestic relations district court and does not contain the petition that commenced the proceeding in which the juvenile was adjudicated a child in need of supervision.

filed, the family assessment and planning team recommended eight actions, including ten days of detention of the juvenile for violating the order and supervised probation for the juvenile. Based on these documents, the juvenile court judge held a hearing attended by various parties, including the parents, the parents' attorney, the juvenile, the juvenile's attorney, and the juvenile's guardian *ad litem*. Following the evidentiary hearing, the judge entered an order, dated February 11, 2005, finding the juvenile continued to be absent from school, the parents had "no control" over the juvenile, and the Madison County Department of Social Services had provided services without success. The order found reasonable efforts had been made to prevent removal of the juvenile from the home and continued placement in the home would be contrary to the child's best interests. See Code §§ 16.1-278.5(B)(1) and 16.1-278.4(6). The order transferred custody of the juvenile to the Department, required the juvenile to comply with all services and placements, imposed twenty days of detention upon the juvenile, and suspended the period of detention "upon condition of placement being arranged and compliance with court orders."

The parents appealed to the circuit court. The circuit judge rejected the Department's arguments that the circuit court lacked jurisdiction because the juvenile did not appeal, that the order was interlocutory in nature, and that the appeal was not timely filed. Following an evidentiary hearing, the circuit judge found that the juvenile was in violation of the order declaring him to be a child in need of supervision and that all community treatment options, including psychological counseling, in-home services, education classes, and family parenting classes, had been exhausted. The judge also found that a group home, foster home or other non-secure residential facility would not likely meet the juvenile's needs. Citing Code § 16.1-292(E)(2)(ii), the circuit judge ordered the juvenile to ten days detention for each violation of the order. The judge suspended the detention order, however, and ordered the family

assessment and planning team to develop an evaluation and treatment plan for the juvenile. Pending his review of the treatment plan, the judge ordered the juvenile to remain in the Discovery School, where the juvenile court judge had previously ordered the child, and the judge continued the hearing.

At the reconvened hearing, the circuit judge reviewed the treatment plan and heard further testimony. After considering the recommendations in the treatment plan and additional evidence, the judge ordered that the treatment plan "be adopted and implemented with the child to be placed at the Discovery School . . . to successfully complete its program, that the parents shall pay the costs of said program, that pending further order of the court visitation shall be at the home of the maternal grandparents, and that [the father] shall complete and fully comply with the substance abuse counseling and aftercare components as recommended by his counselor."

II.

The parents contend the circuit judge's order "placing the child in a non-secure facility . . . violate[d] the provisions of . . . Code § 16.1-292(E)." On brief, they assert "[t]he sole issues before the circuit court . . . were whether [the child] had violated the September 13, 2004 . . . order[, declaring him to be a child in need of supervision,] and what action or punishment was necessary if he should be found to have violated that order." These issues, we note, do not concern the validity of the September 13, 2004 order, which found the juvenile in need of supervision. That order was not appealed and is final.

In pertinent part, Code § 16.1-292 provides as follows:

> E. In the event a child in need of supervision is found to have willfully and materially violated an order of the court pursuant to § 16.1-278.5, the court may enter any of the following orders of disposition:
>
> 1. Suspend the child's motor vehicle driver's license;

- 4 -

2. Order any such child fourteen years of age or older to be (i) placed in a foster home, group home or other nonsecure residential facility, or, (ii) if the court finds that such placement is not likely to meet the child's needs, that all other treatment options in the community have been exhausted, and that secure placement is necessary in order to meet the child's service needs, detained in a secure facility for a period of time not to exceed ten consecutive days for violation of any order of the court arising out of the same petition. The court shall state in its order for detention the basis for all findings required by this section. When any child is detained in a secure facility pursuant to this section, the court shall direct the agency evaluating the child pursuant to § 16.1-278.5 to reconvene the interdisciplinary team participating in such evaluation as promptly as possible to review its evaluation, develop further treatment plans as may be appropriate and submit its report to the court for its determination as to further treatment efforts either during or following the period the child is in secure detention. A juvenile may only be detained pursuant to this section in a detention home or other secure facility in compliance with standards established by the State Board. Any order issued pursuant to this subsection is a final order and is appealable to the circuit court as provided by law.

(A)

Specifically, the parents contend the circuit judge violated Code § 16.1-292 by leaving the juvenile in the Discovery School, a non-secure facility. They argue the circuit judge erred in applying both subsections (i) and (ii) of Code § 16.1-292(E)(2) because the statute is written in the disjunctive. In other words, they argue the statute presents alternative options and does not authorize a judge to "r[u]n together" the remedies. We hold the judge acted within the authority granted under the statute.

The evidence at the initial evidentiary hearing in the circuit court was replete with testimony about the juvenile's violation of the order finding him in need of supervision. Two social workers testified about the juvenile's failure to attend school after entry of the order. The juvenile's mother also testified about his failure to attend school and her efforts at contacting the social workers when the juvenile failed to go to school.

The circuit judge found the evidence proved the juvenile "willfully and materially" violated the order. As an interlocutory remedy, the judge ordered the juvenile to detention. The judge also ordered the family assessment and planning team to "review its prior evaluation or evaluations, to develop further treatment plans as may be appropriate, and to submit a report to the court for its determination as to further treatment efforts as provided in . . . Code § 16.1-292(E)(2)." Pending receipt of the plan, the judge suspended the detention order and permitted the juvenile to remain in the non-secure facility where he was receiving an education. The judge continued the hearing to receive the treatment plan, to consider other evidence, and to make a final disposition.

Under established principles of statutory construction, courts must "determine the General Assembly's intent from the plain and natural meaning of the words used in the statute." Britt Construction v. Magazzine Clean, LLC, 271 Va. 58, 62, 623 S.E.2d 886, 888 (2006). When the statutory language is plain, unambiguous, and does not lead to an absurd result, our sole function is to apply the statute according to the plain meaning expressed. Boynton v. Kilgore, 271 Va. 220, 227, 623 S.E.2d 922, 926 (2006). The express language of Code § 16.1-292(E)(2) permits a judge to place a juvenile in a secured detention facility. Subsection (2)(ii) requires that when a judge opts for such placement, the judge must also direct the family assessment and planning team to develop further treatment plans for the juvenile.

Here, the circuit judge complied with all the provisions of the statute when he ordered the juvenile to detention and directed the family assessment and planning team to conduct another evaluation. By suspending the detentions pending receipt of the treatment plan and retaining the juvenile at the Discovery School during that period, the judge did not abuse his discretion or violate the statute. When a judge considers treatment programs and a child's welfare, the judge is "'vested with broad discretion in making decisions necessary to guard and foster the child's

- 6 -

best interests.'" Fauquier County Dep't of Social Services v. Robinson, 20 Va. App. 142, 153-54, 455 S.E.2d 734, 740 (1995) (quoting Logan v. Fairfax County Dep't of Human Development, 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991)). This is particularly true in the case of a juvenile adjudicated a child in need of supervision. See B.P. v. Commonwealth, 38 Va. App. 735, 738, 568 S.E.2d 412, 413 (2002) (stating courts are vested with necessary and incidental powers to reduce delinquent behavior of children in need of supervision). The circuit judge found, and the parents concede, the juvenile was "doing well and making progress" at the Discovery School. We hold that the judge's interlocutory order was consistent with "'the primary purpose of the juvenile system in Virginia,'" which is "'corrective in nature rather than penal.'" Conkling v. Commonwealth, 45 Va. App. 518, 522, 612 S.E.2d 235, 237 (2005) (quoting Kiracofe v. Commonwealth, 198 Va. 833, 844, 97 S.E.2d 14, 21 (1957)).

At the re-convened hearing, the circuit judge received the report of the family assessment and planning team, and he heard testimony concerning the treatment plan. The treatment plan included the following:

> It is planned that [the child] would complete the Discovery School program and the parents would be able to provide a safe and stable home to which he can return. Should the child complete the program and the home remain unsafe, it would be planned that the child live with his maternal grandparents, who live in the community, and have a positive relationship with the child and his parents.

The circuit judge also heard additional testimony from the juvenile, the parents, and the juvenile's grandfather. At the conclusion of the hearing the judge made extensive comments and findings concerning the evidence. The circuit judge's final order restated his earlier finding that "the Juvenile [was] willfully and materially in violation of the . . . Order previously entered on [September 13, 2004] wherein the juvenile was found to be a child in need of supervision." The order further provided the following:

> Upon consideration of the report, evidence, and argument of counsel, the Court finds that it is in the best interests of the Juvenile to approve and adopt the interdisciplinary team (also known as the FAP Team) plan as submitted in its report, with the goal of returning the juvenile home after completion of the Discovery Program, it is therefore
>
> ORDERED that the interdisciplinary team (also known as the FAP Team) plan as submitted shall be adopted and implemented with the child to be placed at the Discovery School, to successfully complete its program, that the parents shall pay the costs of said program, that pending further order of the court visitation shall be at the home of the maternal grandparents, and that Larry Aylette Aylor, Sr. shall complete and fully comply with the substance abuse counseling program and aftercare components as recommended by his counselor, John Borgens.

See Robinson, 20 Va. App. at 151, 455 S.E.2d at 738-39 (holding courts have authority to consider whether family assessment and planning team recommendations are in the best interest of the child).

The provision of this order committing the juvenile to a residential facility is fully consistent with the express language of Code § 16.1-292(E). Thus, we hold that the circuit judge acted within statutory authority.

(B)

We give no credence to the parents' assertion that they did not receive the statutorily mandated notice of the consequences of violating the September 13, 2004 order. The circuit court's record contains a copy of the September 13, 2004 order, which found the juvenile in need of supervision. It expressly informed the juvenile and his parents that, if the juvenile violated the order, the judge had the authority to "order the child to be placed in a residential facility," or "to order the child detained in a secure facility." The order recites that "copies of this order were presented in open court" to the attorney for the parents and the juvenile and was served on the parents and the juvenile. Thus, this order satisfied Code § 16.1-278.5(C), which requires that "[a]ny order entered pursuant to this section shall be provided in writing to the child, his parent

- 8 -

or legal custodian, and to the child's attorney and shall contain adequate notice of the provisions of § 16.1-292 regarding willful violation of such order."

Simply put, the September 13, 2004 order, finding the juvenile a child in need of supervision, informed the parents and the juvenile that the remedy the judge imposed was a disposition available to the judge. Accordingly, we hold that the record fails to support the parents' claims that they received inadequate notice and that the judge "violated the provisions of . . . Code § 16.1-292(E)" when he ordered that the juvenile be placed in a non-secure residential facility because of his willful and material violation of the order finding him to be in need of supervision.

(C)

The parents also argue the juvenile and domestic relations "District Court acted outside its authority . . . by removing the child from the parents' custody and putting him in the custody of the Department of Social Services." The parents assert they were not "put . . . on notice that such an outcome might be contemplated in that hearing" and further argue "[s]trict compliance with the statutory scheme for disposition of child custody cases is required by due process." These arguments, which the parents contend are grounded in "due process," are not encompassed within the scope of the question presented in the parents' brief, to wit, "did the trial court's order placing the child in a non-secure residential facility and requiring the parents to pay for the placement violate the provisions of Va. Code § 16.1-292(E)?" Because these arguments raise issues separate and distinct from the question presented, we decline to address them. See Cirrito v. Cirrito, 44 Va. App. 287, 309, 605 S.E.2d 268, 278 (2004) (holding that we will not consider an "argument [that] is not part of the questions presented that were designated for appeal"); Hillcrest Manor Nursing Home v. Underwood, 35 Va. App. 31, 39 n.4, 542 S.E.2d 785, 789 n.4 (2001) (declining to consider "an issue not expressly stated among the 'questions presented'").

We note, in addition, the record before us does not include a complete account of the events occurring in the juvenile court. The parties offered as exhibits in the circuit court only copies of various documents from the juvenile court proceedings. One exhibit was a copy of the order of the juvenile court, which transferred custody of the child to the Department. That order unambiguously recited that "[p]roper notice of this hearing was provided by the court to the: . . . child . . . father . . . mother." The record before us contains nothing to refute the recital in the order of proper service. Indeed, the record does not contain certificates of service or any document that would indicate notice was not properly given of the transfer of custody.

> [Appellate courts] have many times pointed out that on appeal the judgment of the lower court is presumed to be correct and the burden is on the appellant to present to us a sufficient record from which we can determine whether the lower court has erred in the respect complained of. If the appellant fails to do this, the judgment will be affirmed.

Justis v. Young, 202 Va. 631, 632, 119 S.E.2d 255, 256-57 (1961). See also Kyhl v. Kyhl, 32 Va. App. 53, 59-60, 526 S.E.2d 292, 295 (2000) (holding that we will not address a claim of abuse of discretion when the record is not accurate and complete); Smith v. Commonwealth, 16 Va. App. 630, 635, 432 S.E.2d 2, 6 (1993) (holding that the appellant has the burden to present a sufficient record to enable this Court to determine whether error has occurred).

### III.

The parents further contend that "the trial court's order . . . requiring the parents to pay for the placement violate[d] the provisions of . . . Code § 16.1-292(E)."

In violation of the Rules of Court, the brief contains *no* discussion of "the principles of law, the argument, and the authorities relating to . . . [this] question presented." Rule 5A:20(e). For example, the brief makes no argument about the applicability of Code §§ 16.1-286, 16.1-290, or 16.1-290.1 (requiring the parents to contribute to the support of the child when

- 10 -

circumstances satisfy the statutory requirements). The absence of any argument or discussion concerning the applicability of these statutes is glaring.

We have repeatedly held that "'[s]tatements unsupported by argument, authority, or citations to the record do not merit appellate consideration.'" Budnick v. Budnick, 42 Va. App. 823, 833, 595 S.E.2d 50, 55 (2004) (quoting Roberts v. Roberts, 41 Va. App. 513, 527, 586 S.E.2d 290, 297 (2003)).

> [O]ne of the fundamental purposes of Rule 5A:20(e) is to provide the appellee with notice of the authorities upon which the appellant purports to rely. Excepting oral argument, the appellee is given a single opportunity to distinguish cases and respond to arguments raised in the appellant's opening brief. See Rule 5A:21; see also Rule 5A:19 (granting the appellant, but not the appellee, the right to file a reply brief). . . . Permitting an appellant to sidestep the provisions of Rule 5A:20(e) . . . would therefore deprive the appellee of the opportunity to meaningfully respond to the appellant's argument, thereby eviscerating the underlying purpose of the Rule.

Jeter v. Commonwealth, 44 Va. App. 733, 740-41, 607 S.E.2d 734, 737 (2005). See also Bennett v. Commonwealth, 35 Va. App. 442, 452, 546 S.E.2d 209, 213 (2001) (declining to consider an issue not supported by argument or authorities in the appellant's brief). For these reasons, we hold the parents' failure to adequately brief this question presented is a waiver of the issue. Burns v. Commonwealth, 261 Va. 307, 318, 541 S.E.2d 872, 880 (2001). We, therefore, do not address the issue of the judge's authority to order payment.

## IV.

For the reasons stated above, we affirm the judgment order.

Affirmed.
