COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Petty and Huff
Argued at Salem, Virginia


WARREN ANTHONY THOMAS

                                                         OPINION BY
v.       Record No. 0390-11-3                   JUDGE WILLIAM G. PETTY
                                                      JANUARY 24, 2012

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
J. Leyburn Mosby, Jr., Judge

Keith Orgera (Steven Birocco; Office of the Public Defender, on
brief), for appellant.

Karen Misbach, Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General; Joshua M. Didlake, Assistant
Attorney General, on brief), for appellee.


Warren Anthony Thomas appeals his two convictions for driving as a habitual offender,

in violation of Code § 46.2-357. Thomas challenges the sufficiency of the evidence supporting

these convictions, arguing that he cannot be convicted under the current version of Code

§ 46.2-357 because his driver's license was not actually "revoked" within the meaning of the

Code. For the following reasons, we disagree with Thomas's arguments. Therefore, we affirm

his convictions.

I. BACKGROUND

The relevant facts are not in dispute. On August 24, 1993, Thomas was declared a

habitual offender, pursuant to former Code § 46.2-351.[1] The circuit court's order adjudicating

_____

[1] This section was repealed in 1999. It set forth the definitional requirements of a
"habitual offender." For a basic discussion of the General Assembly's partial repeal of the
Habitual Offender Act in 1999, see Lilly v. Commonwealth, 50 Va. App. 173, 179-81, 647
S.E.2d 517, 520-21 (2007). As this Court noted in Lilly,

him as such stated that Thomas was "barred from operating a motor vehicle on the highways of the Commonwealth of Virginia." Furthermore, the order required Thomas "to surrender to [the] [c]ourt any and all licenses or permits to operate a motor vehicle on the highways of this State for disposal according to law." The order did not use the term "revoke" or "revocation."

In 2010, Thomas was indicted for two different violations of Code § 46.2-357. The first indictment was for driving as a habitual offender while in violation of Code § 18.2-266 and having previously been convicted of a violation of Code § 18.2-266. See Code § 46.2-357(B)(2). The second indictment was for driving as a habitual offender, second or subsequent offense. See Code § 46.2-357(B)(3).

At trial, after the Commonwealth presented its case-in-chief, Thomas presented no evidence, but made a motion to strike, which the trial court took under advisement. On November 8, 2010, the trial court denied Thomas's motion to strike and convicted him on both counts of violating Code § 46.2-357. Thomas now appeals these convictions.

## II. ANALYSIS

Thomas argues that he cannot be convicted for violating Code § 46.2-357 because the circuit court's 1993 order declaring him a habitual offender did not "revoke" his driver's license within the defined meaning of that term in Title 46.2. Code § 46.2-357 provides, in relevant part: "It shall be unlawful for any person determined or adjudicated an habitual offender to drive any motor vehicle or self-propelled machinery or equipment on the highways of the

> Effective July 1, 1999, the General Assembly repealed the then-current method of declaring a driver to be an habitual offender. Under that process, the Division of Motor Vehicles would make such a declaration in a civil administrative proceeding subject to judicial review. The General Assembly, however, did not repeal the criminal provision prohibiting previously declared habitual offenders from driving [i.e., Code § 46.2-357].

50 Va. App. at 180, 647 S.E.2d at 520.

Commonwealth while the revocation of the person's driving privilege remains in effect." Code § 46.2-357(A). Thomas does not contest that he is a habitual offender or that he is barred from driving a vehicle in the Commonwealth. Rather, he argues that the language "while the revocation of the person's driving privilege remains in effect," Code § 46.2-357(A), requires that the Commonwealth prove that his driver's license was actually *revoked*. This, he argues, the Commonwealth failed to do, since the 1993 order declaring him a habitual offender did not satisfy Title 46.2's definition of "revoke."

Code § 46.2-100 provides that "'[r]evoke' or 'revocation' means that the document or privilege revoked is not subject to renewal or restoration except through reapplication after the expiration of the period of revocation."[2] The question before us is whether the circuit court's 1993 order was sufficient to revoke Thomas's driving privilege for purposes of Code § 46.2-357(A). We hold that it was.

We review questions of statutory construction *de novo* on appeal. Lynchburg Div. of Soc. Servs. v. Cook, 276 Va. 465, 480, 666 S.E.2d 361, 368 (2008). Furthermore,

> "[i]n the construction of statutes, the courts have but one object, to which all rules of construction are subservient, and that is to ascertain the will of the legislature, the true intent and meaning of the statute, which are to be gathered by giving to all the words used their plain meaning, and construing all statutes *in pari materia* in such manner as to reconcile, if possible, any discordant feature which may exist, and make the body of the laws harmonious and just in their operation."

Lucy v. Cnty. of Albemarle, 258 Va. 118, 129-30, 516 S.E.2d 480, 485 (1999) (quoting Tyson v. Scott, 116 Va. 243, 253, 81 S.E. 57, 61 (1914)).

---

[2] In contrast, "'[s]uspend' or 'suspension' means that the document or privilege suspended has been temporarily withdrawn, but may be reinstated following the period of suspension unless it has expired prior to the end of the period of suspension." Code § 46.2-100.

At the time Thomas was declared a habitual offender, former Code § 46.2-355 provided that when a court found a person to be a habitual offender, it was to issue an order "direct[ing] the person not to operate a motor vehicle on the highways in the Commonwealth and to surrender to the court all licenses or permits to drive a motor vehicle on the highways in the Commonwealth for disposal in the manner provided in [Code] § 46.2-398." The version of Code § 46.2-357(A) then in effect provided that "[i]t shall be unlawful for any person to drive any motor vehicle or self-propelled machinery or equipment on the highways of the Commonwealth while the order of the court prohibiting such operation remains in effect."

In 1995, Code § 46.2-355 was amended to provide that when a court found a person to be a habitual offender, it was to

> enter an order (i) revoking the person's license if the proceeding is pursuant to [Code] § 46.2-351.2 or (ii) affirming the determination of the Commissioner and the revocation of the person's license if the proceeding is pursuant to [Code] § 46.2-352 and directing the person not to operate a motor vehicle on the highways in the Commonwealth and to surrender to the court all licenses or permits to drive a motor vehicle on the highways in the Commonwealth for disposal in the manner provided in [Code] § 46.2-398.

Similarly, Code § 46.2-357(A) was simultaneously amended to provide that "[i]t shall be unlawful for any person to drive any motor vehicle or self-propelled machinery or equipment on the highways of the Commonwealth while the revocation of the person's driving privilege remains in effect."[3]

Thomas contends that the new "revocation" terminology in these amendments introduced a new element into the offense that was not present before and that a court's order tracking the language of the older version of Code § 46.2-355 is therefore insufficient to meet the requirements of the amended language of Code § 46.2-357. We believe that the circuit court's

---

[3] These amendments took effect on January 1, 1996.

order here, which utilized the language of the older Code § 46.2-355, was sufficient to "revoke"

Thomas's license within the definition of that term in Code § 46.2-100.

Under Code § 46.2-100, a driver's license or privilege to drive that has been "revoked" is

"subject to *renewal* or *restoration* . . . through *reapplication* after the expiration of the period of

revocation." (Emphasis added.)[4] Significantly, Code § 46.2-356 provides:

> No license to drive motor vehicles in Virginia shall be *issued* to any person determined or adjudicated an habitual offender (i) for a period of ten years from the date of any final order of a court entered under this article or if no such order was entered then the notice of the determination by the Commissioner finding the person to be an habitual offender and (ii) until the privilege of the person to drive a motor vehicle in the Commonwealth has been *restored* by an order of a court entered in a proceeding as provided in this article.

(Emphasis added.)[5] Two important observations are apparent from the language of this section.

First, a person who has previously been declared a habitual offender must be *re-issued* a new

driver's license; he does not receive his old license back. This implies that his former license

was revoked, not merely suspended, and that he must accordingly *reapply* for a new license

"after the expiration of the period of revocation." See Code § 46.2-100. Second, a person who

has previously been declared a habitual offender must have his privilege to drive *restored* by a

court order. This also implies that the person's license is deemed to have been revoked, because

revoked licenses are subject to *restoration*, while suspended licenses are merely subject to

*reinstatement*. See id.

Thus, Code § 46.2-356 treats anyone who has ever been declared a habitual offender as

having had his driver's license revoked. If a habitual offender is unable to obtain a driver's

---

[4] A license or privilege that has merely been suspended is regained by being "reinstated." Code § 46.2-100.

[5] The version of this statute in effect before the 1995 amendments was substantially the same as the current version for purposes relevant to the issue before us.

license without having a court order restoring his privilege to drive and being issued a new driver's license, we fail to see how a habitual offender could ordinarily be someone who has not had his privilege to drive "revoked" as that term is defined in Code § 46.2-100.[6]  When Thomas was declared a habitual offender, he was barred from operating a motor vehicle on the highways and was ordered to surrender his driver's license.  Thereafter, to reacquire his privilege to drive, he would have had to apply for the issuance of a new driver's license.  Therefore, it is simply a distinction without a difference to suggest that his privilege to drive was not revoked for purposes of Code § 46.2-357(A).

It is certainly true, as Thomas points out, that "when a statute has been amended, there is a presumption that the General Assembly intended to effect a substantive change in the law." Britt Constr., Inc. v. Magazzine Clean, LLC, 271 Va. 58, 63, 623 S.E.2d 886, 888 (2006). Accordingly, we must "assume that a statutory amendment is purposeful, rather than unnecessary."  Id.  Moreover, we are mindful, as Thomas also observes, that "'[p]enal statutes must be strictly construed against the State and . . . cannot be extended by implication or construction, or be made to embrace cases which are not within their letter and spirit.'" Armstrong v. Commonwealth, 263 Va. 573, 581, 562 S.E.2d 139, 144 (2002) (omission in original) (quoting Commonwealth Dep't of Motor Vehicles v. Athey, 261 Va. 385, 388, 542 S.E.2d 764, 766 (2001)).

"However, although we construe statutes strictly in criminal cases, we will not apply 'an unreasonably restrictive interpretation of the statute' that would subvert the legislative intent expressed therein."  Id. (quoting Ansell v. Commonwealth, 219 Va. 759, 761, 250 S.E.2d 760,

---

[6] Of course, we acknowledge that the order adjudicating a person a habitual offender must be complete, including a prohibition against operating a motor vehicle on the highways in the Commonwealth.  See Rose v. Commonwealth, 265 Va. 430, 435, 578 S.E.2d 758, 761 (2003).

761 (1979)). Indeed, "'[t]he primary objective of statutory construction is to ascertain and give effect to legislative intent.'" Commonwealth v. Amerson, 281 Va. 414, 418, 706 S.E.2d 879, 882 (2011) (quoting Conger v. Barrett, 280 Va. 627, 630, 702 S.E.2d 117, 118 (2010)). We believe that a fair reading of the provisions of the Habitual Offender Act indicates that the General Assembly did not intend the results that would logically follow from Thomas's proposed interpretation of Code § 46.2-357(A).

Under Thomas's reading of Code § 46.2-357(A), no person can be prosecuted under that section if the order declaring him a habitual offender tracks the language of the older, pre-amended version of Code § 46.2-355. Thomas asks us to read Code § 46.2-357(A) as requiring the specific term "revoke" or "revocation" to have been used in a court's order declaring someone a habitual offender. However, were we to adopt such an interpretation, we would effectively be asserting that by amending the statute in the manner it did in 1995, the General Assembly intended that anyone declared a habitual offender after 1995 would be subject to the provisions of Code § 46.2-357, but that anyone declared a habitual offender under the language of the pre-amended statute would no longer be subject to prosecution under Code § 46.2-357.[7] We do not believe the General Assembly intended such an incongruous result. See Meeks v. Commonwealth, 274 Va. 798, 802, 651 S.E.2d 637, 639 (2007) ("[A] statute should never be construed in a way that leads to absurd results.").

---

[7] Of course, we recognize that some pre-1996 orders adjudicating individuals habitual offenders used the term "revoke." See, e.g., Varga v. Commonwealth, 260 Va. 547, 549, 536 S.E.2d 711, 712 (2000) (circuit court's order from 1984 declared defendant a habitual offender and stated that his "privilege to operate a motor vehicle in the Commonwealth of Virginia [was] REVOKED"); Long v. Commonwealth, 23 Va. App. 537, 541, 478 S.E.2d 324, 326 (1996) (substantially identical order from 1986). Undoubtedly, however, many of the pre-1996 orders would simply have tracked the language of the statute then in effect, as did the order in this case. We do not believe the General Assembly meant to differentiate between these types of orders and the legal effect they would or would not continue to have when it amended Code §§ 46.2-355 and 46.2-357 in 1995.

Thomas attempts to analogize this case to Rose v. Commonwealth, 265 Va. 430, 578 S.E.2d 758 (2003). In Rose, a general district court had issued an order in 1996 adjudicating Rose a habitual offender, but the court had not checked the box on its order that would have revoked Rose's driver's license and ordered him "not to operate a motor vehicle on the highways of the Commonwealth." Id. at 433, 578 S.E.2d at 759. The Supreme Court noted that "to sustain a conviction for driving a motor vehicle in violation of [Code § 46.2-357(A)], the Commonwealth must prove that the defendant's driving privilege has been revoked." Id. at 434, 578 S.E.2d at 760. Reversing Rose's conviction for violating Code § 46.2-357, the Court reasoned that the order before it "determined Rose to be an habitual offender but failed to direct him not to operate a motor vehicle on the highways in the Commonwealth." Id. at 435, 578 S.E.2d at 761. Accordingly, the Court held that "an 'incomplete' order which adjudicates a person as an habitual offender, but 'erroneously' fails to impose the required prohibition against that person operating a motor vehicle, does not satisfy the Commonwealth's burden of proof in a subsequent trial charging that person with violating Code § 46.2-357." Id.

Here, the circuit court's order did not simply adjudicate Thomas a habitual offender, but also "barred [him] from operating a motor vehicle on the highways of the Commonwealth of Virginia." Thus, the order was not incomplete, and Rose does not compel a conclusion that the order in this case is insufficient to satisfy the Commonwealth's burden of proof for establishing a violation of Code § 46.2-357.

In sum, we conclude that the circuit court's order in 1993 adjudicating Thomas a habitual offender and using the language of the pre-amended Code § 46.2-355 in effect at that time was sufficient to revoke Thomas's driving privilege within the meaning contemplated by Code § 46.2-357 and to render Thomas subject to prosecution under that section. Therefore, we hold

that the trial court did not err in finding the evidence sufficient to convict Thomas for violating

Code § 46.2-357.

## III. CONCLUSION

For the foregoing reasons, we affirm Thomas's convictions.

Affirmed.